# UNITED STATES CIRCUIT COURT.

ISRAEL CHAPPEL and others agt. THE SCHOONER JOHN E.
CLAYTON.

In claims for *salvage*, the courts always look to the nature and character of the
service, the time consumed by the salvors, the peril involved, the expense, as
well as to the situation and condition of the vessel saved, and its value, in fix-
ing compensation.

As a general rule, the rate of salvage of a vessel, which is derelict at sea, is a
*moiety* of her value. This, however, except in very special cases in which
great hardships and damages have been encountered, is the extreme limit.

*New - York, October,* 1859.

APPEAL from a decree awarding salvage compensation.

NELSON, C. J. The libel was filed in this case to recover
salvage. The master and hands of the sloop T. E. Crocker,
five in number, were on their way to the fishing grounds, which
are about thirty miles from Sandy Hook, on the morning of
the 27th of November, 1856, and when some twelve or fif-
teen miles from the Hook discovered a vessel, which after-
ward was found to be the schooner John E. Clayton, on her
beam ends, with a large hole stove in her side, sufficient to
have sunk her instantly, had it not been for her load of
cargo, which was wood. She lay in the open sea about two
miles from the track, and when reached it was ascertained that
the crew had abandoned her.

The weather was fair, but the sea somewhat rough, with a
strong breeze from the land. The sea was breaking over the
vessel and drifting her further from the land. It was neces-
sary to strip her of her sails and cut away her foremast in or-
der to right her. The libelants were assisted by another ves-
sel, the Tobiatha, and both vessels were engaged from six or
seven o'clock in the morning till two in the afternoon, in right-
ing the derelict and preparing her to be towed to New-York.

They reached Jersey City about nine o'clock that evening. The vessel saved was admitted to be of the value of $3,000. The court below allowed a gross sum of salvage to the amount of $1,200, being two-fifths the value of the vessel.

As a general rule, it is undoubtedly true, that the rate of salvage of a vessel, which is derelict at sea, is a moiety of her value. This, however, except in very special cases, in which great hardships and damages have been encountered, is the extreme limit.

The courts always look to the nature and character of the service, the time consumed by the salvors, the peril involved, the expense, as well as to the situation and condition of the vessel saved, and its value, in fixing the compensation; not upon the idea of a *quantum meruit*, but by way of rewarding the services in proportion to the degree of merit belonging to the particular case.

Now, in the case before us, there is nothing in the evidence showing any extraordinary degree of merit, at any great sacrifice of time or money. The vessel was found some twelve or fifteen miles from the bay of New-York, within two miles of the track of the salvors on their fishing expedition; a day only was consumed in raising and bringing the derelict to port. The weather was pleasant, and no particular hardship or danger was encountered.

' We cannot but think that the amount allowed by the court below exceeded a reasonable compensation for the service, and that one-fourth of the value will afford ample value to the salvors, and the most that should be awarded under the circumstances. The service rendered by the Tobiatha seems to have been very slight, according to the evidence.

We shall, therefore, modify the decree of the court below, by awarding to the Thomas E. Crocker and hands $600; and to the Tobiatha and hands $150, without costs on either side in this court. The costs to stand for libelants as decreed in the court below.